# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | **JUDGE RICHARD L. SPEER** |
| Michael/Laura Pietras | |
|     Debtor(s) | Case No. 10-3169 |
| Michael Pietras, et al. | (Related Case: 10-32121) |
|     Plaintiff(s) | |
| v. | |
| U.S. Dept. of Education, et al | |
|     Defendant(s) | |

### DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiffs/Debtors' Complaint to Determine Dischargeability. At issue at the Trial was whether the Plaintiff, Laura Pietras, was entitled to receive a discharge of certain educational debts pursuant to the "undue hardship" standard as set forth in 11 U.S.C. § 523(a)(8). At the conclusion of the Trial, the Court took the matter under advisement so as to afford the opportunity to fully consider the evidence and the arguments raised by the Parties. The Court has now had this opportunity and, for the reasons set forth herein, declines to enter a finding of "undue hardship."

### FACTS

The Debtors, Michael and Laura Pietras (hereinafter collectively referred to as the "Debtors"), are before this Court, having filed on March 31, 2010, a petition for relief under Chapter 7 of the

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

United States Bankruptcy Code. On July 29, 2010, the Court entered an order of discharge for both of the Debtors. Just prior to the entry of their discharge, the Debtors, averring "undue hardship," brought the action now before the Court, seeking a determination that certain obligations incurred to finance the higher education of the Debtors' daughter should be subject to the Court's order of discharge. On this matter, the following factual information was presented to the Court.

At the time they filed for bankruptcy relief, the Debtors disclosed assets of $102,506.50 and liabilities of $287,042.96. In terms of value, the Debtors' most significant asset consisted of their home, which they valued at $81,300.00. According to the Debtors, their home is fully mortgaged, with the amount of the secured claim being $83,744.00.

In terms of real property, the Debtors also disclosed an interest in two timeshares. For these timeshares, the Debtors claimed that their interest in the properties was of a limited value. Furthermore, as was the situation with their home, the Debtors set forth that secured claims, exceeding the value of their interest in the timeshares, encumbered the properties.

In addition to their real property, the Debtors set forth that they had personal property valued at $17,020.50. The personal property of the Debtors included an unencumbered 2004 Chevy Silverado, valued at $7,325.00, a 1998 van of an indeterminate value, and exempt retirement savings of just under $6,000.00.

At the time they filed for bankruptcy relief, the Debtors' disclosed that they intended to reaffirm the obligations encumbering their residence and their two timeshares. Although no reaffirmation agreements have been filed with the Court, the Debtors testified that, partially consistent with their stated intentions, they continue to honor the obligations encumbering their residence and one of their timeshares.

Page 2

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

Of the Debtors' liabilities, $117,727.96 constituted secured debt, while the remaining debt of $169,315.00 consisted of nonpriority, unsecured debt. Of the Debtors' unsecured debt, a majority was comprised of the student-loan obligations which Mrs. Pietras now seeks to discharge. These obligations arose when Mrs. Pietras cosigned on three educational obligations incurred by and for the benefit of the Debtors' daughter. The amount and outstanding balance of these loans, which are now held by the Defendant, National Collegiate Trust, are as follows:

> Note No. 1, incurred on May 12, 2006, in the amount $32,349.72. Outstanding balance of $44,714.33.
>
> Note No. 2, incurred on August 4, 2006, in the amount of $31,642.62. Outstanding balance of $44,792.52.
>
> Note No. 3, incurred on July 20, 2007 in the amount of $32,349.72. Outstanding balance of $42,498.68.

Since these loans were incurred, the Debtors have not made any attempt to repay the obligations, nor have the Debtors sought to obtain a deferment. The same appears to be true for the Debtors' daughter.

At the time they filed for bankruptcy relief, the Debtors were experiencing a number of ongoing health issues, both physical and mental. Based upon their health issues, the Debtors related to the Court that they are unable to work and that they derive all their financial support from various governmental benefits afforded to them. On a net basis, these governmental benefits afford the Debtors $4,841.00 in monthly income.

On the expense side of the equation, the Debtors claimed $4,799.49 in necessary, monthly expenditures, leaving the Debtors a very slight surplus in their monthly budget. The necessary, monthly expenses claimed by the Debtors included the following itemized expenditures:

| | |
|---|---|
| Mortgage | $720.00 |

Page 3

| | |
|---|---|
| Cell Phone Service | $225.00 |
| Cable vip package | $150.00 |
| Home Maintenance | $600.00 |
| Food | $625.33 |
| Medical/Dental | $538.33 |
| Transportation | $500.00 |
| Charitable Contributions | $150.00 |
| Auto Insurance | $200.00 |
| Taxes, property and income | $250.00 |
| Auto Payment | $300.00 |

(Doc. No. 48). The Debtors also testified to the effect that, in addition to the above expenditures, they presently allocate just over $200.00 per month to service the obligation on the timeshare they are retaining.

## DISCUSSION

The Plaintiffs/Debtors brought this adversary proceeding, seeking a determination that the liabilities incurred by Mrs. Pietras, as a cosignatory on her daughter's student-loan obligations, are dischargeable debts in bankruptcy based upon the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). This section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

Page 4

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
>
>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

A determination regarding the applicability of this provision, as it concerns the dischargeability of a particular debt, is deemed to be a core proceeding. 28 U.S.C. § 157(b)(2)(I). Accordingly, as a "core proceeding," this Court has been conferred with the jurisdictional authority to enter final orders and judgments on the Debtors' Complaint. 28 U.S.C. § 157(b)(1).

Individuals, such as the Debtors, seeking relief under Chapter 7 of the Bankruptcy Code do so with the aim of obtaining an immediate discharge of their debts. *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir.2008). For reasons of public policy, however, Congress placed certain categories of debts outside the scope of a bankruptcy discharge. 11 U.S.C. § 523(a): Among the types of debts excluded from the scope of a bankruptcy discharge are those debts incurred by a debtor to finance a higher education. A primary reason for this exclusion to discharge rested upon the perceived need to rescue the student-loan program from potential insolvency. *Roberts v. U.S. Dep't of Educ. (In re Roberts)*, 442 B.R. 116, 118 (Bankr. N.D.Ohio 2010), *citing* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. II 140, n.14 (1973).

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

At the same time, Congress also determined that exceptional circumstances could arise which would warrant carving out an exception to the general rule that student-loan debts were nondischargeable. This is in contrast to certain other types of nondischargeable debts which, so long as they qualify as the type of debt excepted from discharge, are absolutely excluded from the scope of a bankruptcy discharge. *See, e.g.*, 11 U.S.C. § 523(a)(2)/(4)/(6) (excepting generally from discharge debts arising from a debtor's wrongful acts). In carving out an exception to nondischargeability, Congress provided that student-loan debts could be discharged in bankruptcy upon a showing that repaying the loan would impose upon the debtor and/or the debtor's dependents an "undue hardship." 11 U.S.C. § 523(a)(8).

The Bankruptcy Code does not define the term "undue hardship." However, it is well-established that the term necessarily denotes a heightened standard, requiring a showing beyond the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief; otherwise, the exception would swallow the rule. *In re Frushour*, 433 F.3d 393, 400 (4th Cir.2005). To assess whether repaying a student loan would impose upon a debtor an "undue hardship," the Sixth Circuit Court of Appeals has held that a bankruptcy is to apply what is known as the Brunner test, named after the case from which it originated.[1] *Barrett v. Educational Credit Management Corp.*, 487 F.3d 353, 358 (6th Cir. 2007), *citing Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the Brunner test, three elements must exist for a debtor to obtain an "undue hardship" discharge of their student-loan debt:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

---

[1] *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987).

Page 6

> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) That the debtor has made good faith efforts to repay the loans.

It is a debtor's burden to show the existence of each of these elements by at least a preponderance of the evidence. *Barrett*, 487 F.3d at 358–59. Regarding the Debtors' compliance with their evidentiary burden, the Court will address each of the Brunner test elements in order. However, before beginning with this analysis, the Court will first address an initial point raised by the Debtors.

In seeking to have the educational loans incurred by Mrs. Pietras discharged, the Debtors made the point that the loans at issue were incurred not for their direct benefit, but were rather incurred for the benefit of their daughter. Although not explicitly stated by the Debtors, this point was apparently raised to support this premise: Since the Debtors were not the direct beneficiaries of the student loans, the obligations incurred by Mrs. Pietras do not qualify as educational debts for purposes of § 523(a)(8).

This Court, however, long ago rejected the position that a parent's liability on an educational debt incurred for the benefit of their child is excepted from the scope of § 523(a)(8). In *Hawkins v. Chase Manhattan Bank (In re Hawkins)*, this Court stated:

> The legislative history offers no basis for not enforcing the literal language of Section 523(a)(8) to bar the discharge of educational loans signed by a student's parent. See 124 Cong.Rec. 1791–98 (1978). If non-student educational loans signed by the student's parent were allowed to be discharged in this manner, then before long many students would have their parents obtain their educational loans, and have the parents file for bankruptcy shortly thereafter. This would create a legal loophole which was not intended by Congress. By not excepting from discharge all educational loans which fall under the guise of Section 523(a)(8), the integrity of the educational loan programs would remain secure.

Page 7

139 B.R. 651, 653 (Bankr. N.D.Ohio 1991). This position is also the generally accepted approach adopted by other courts when confronted with this issue.[2] Accordingly, the fact that Mrs. Pietras was a cosignatory on her daughter's educational loans, does render § 523(a)(8) inapplicable in this case, and thus for Mrs. Pietras to receive a discharge of her student-loan obligations, the Debtors must sustain their burden under the Brunner test.

The first prong of the Brunner test asks whether a debtor can maintain a minimal standard of living if required to repay the student loans. This prong of the Brunner test is premised on the notion that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of their student-loan creditor(s). *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852, 857 (Bankr. N.D.Ohio 2004), citing *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996). Consistent with this policy, an assessment under the first prong of the Brunner test generally means that, while a debtor is not expected to live in abject poverty to qualify for a discharge of their student-loan obligation, a debtor is expected to significantly tighten their financial belt and forego amenities to which they may have become accustomed. *In re Lowe*, 321 B.R. at 857–58.

In this matter, the financial picture presented by the Debtors shows that they have, and will likely continue to have, financial resources available which could be allocated to repay the educational debts for which Mrs. Pietras is liable. In particular, while the Debtors claim that after paying their necessary expenses they only have a minimal amount of income at the end of each month, the Debtors' budget shows an ability to economize in a number of areas.

---

[2] *See, e.g., In re Pelkowski*, 990 F.2d 737 (3rd Cir. 1993) (Section 523(a)(8) applies to co-signer of note for educational expenses of another person, and therefore Chapter 7 debtor parent who co-signed educational loans may not discharge those debts). *See also Clark v. Educational Credit Mgmt Corp. (In re Clark)*, 273 B.R. 207, 210 (Bankr. N.D.Iowa 2002) (collecting cases).

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

First, and most obviously, the Debtors' allocation of over $200.00 per month to pay for a timeshare cannot be considered, within the scope of the Brunner test, an expense necessary to maintain a 'minimal' standard of living. *See Kehler v. Nelnet Loan Services (In re Kehler)*, 326 B.R. 142, 149 (Bankr. N.D.Ind. 2005) (timeshare, for which debtor paid 208.00 per month in lieu of paying student loan debt, not permissible); *Dolan v. American Student Assistance (In re Dolan)*, 256 B.R. 230, 239 (Bank. D.Mass.2000) (sums budgeted by debtor for vacations, such as camping trips with spouse and children, not necessary to maintain a minimal standard of living).

The Debtors' monthly allocation of $225.00 for cell phone service and $150.00 for a 'vip cable package' is also not consistent with the minimal standard of living envisioned by the first prong of the Brunner test. While these types of expenses are not categorically disallowed, the degree to which the Debtors spend on these categories of expenses simply does not align itself to what is the operative word under the first prong of the Brunner test: Minimal. In this way, an expense, although otherwise reasonable when considered in other contexts of the Bankruptcy Code,[3] will not pass muster under the minimal standard of living requirement of the Brunner test. This is especially true when the expense does not implicate basic necessities such a food, clothing and shelter. *See Sandra Cekic–Torres v. Access Group, Inc. (In re: Cekic–Torres)*, 431 B.R. 785, 790 (Bankr. N.D.Ohio 2010) ("Brunner test, anticipates that a debtor will allocate sufficient resources to maintain basic necessities, such as that needed for food, shelter, clothing and medical treatment.")

In looking at the specifics of this case, a few things particularly stand out for the Court regarding the Debtors' expenses for cell phone and cable services. First, in paying $225.00 per month for cell phone usage, the Debtors acknowledged that they have a cell phone plan which affords them

---

3

*See, e.g.*, 11 U.S.C. § 1325(b)(2), providing that in a Chapter 13 plan, a debtor may deduct from his or her plan payments "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . . ."

Page 9

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

services well beyond those found in a basic plan. With neither of the Debtors employed, this higher level of service seems very much a luxury taken at the expense of the Defendant. Further supporting this conclusion, the Debtors also revealed to the Court that they have included their adult daughter in their cell phone service plan, adding approximately $70.00 per month to their bill.

Similarly, the Debtors' $150.00 per month expenditure to obtain 'vip cable service' is beyond that needed to maintain a minimal standard of living. By way of example, it was disclosed to the Court that, while their cable package includes the internet, it also includes phone service, a service which necessarily duplicates their cell phone plan. Moreover, the 'vip package' received by the Debtors is presumably beyond that of basic cable service, and thus is hardly indicative of an expense necessary to maintain a minimal standard of living. In this way, some courts have gone so far as to hold that the expenditure of funds for cable service is a *per se* impermissible expense when making an "undue hardship" determination under § 523(a)(8). *Faktor v. United States*, 306 B.R. 256, 261 (Bankr. N.D.Iowa 2004) (cable and internet expense not allowed); *McLaughlin v. U.S. Funds (In re McLaughlin)*, 359 B.R. 746, 753 (Bankr. W.D.Mo. 2007) (cable television is not necessary to maintain a minimal standard of living). *Compare In re Durrani*, 311 B.R. 496, 504-05 (Bankr. N.D.Ill. 2004) ("$52.00 monthly expense for cable is not inappropriate.").

The overall financial situation presented by the Debtors also fails to measure up to the requirement imposed by the second prong of the Brunner test. Under the second prong of the Brunner test, the question is whether the conditions giving rise to the debtor's inability to repay the student loan are temporary or whether the conditions will extend over a substantial portion of the repayment period. This element implements the underlying purpose of the "undue hardship" standard of § 523(a)(8): to ensure that the financial hardship the debtor is experiencing is actually "undue," as opposed to the garden-variety financial hardship which, by definition, all debtors who seek bankruptcy relief experience. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 778 (Bankr. N.D.Ohio 2007).

Page 10

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

As is often the case where a debtor seeks to discharge an educational debt, a medical condition will form a central component of a debtor's case in support of a finding of an "undue hardship" under § 523(a)(8). *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 445 (Bankr. N.D.Ohio 2003). This case is no exception, with both of the Debtors asserting that, because of their physical and mental infirmities, they "are permanently disabled and will not be able to increase their income through employment." (Doc. No. 37).

In assessing their position, the Court accepts, as a purely factual matter, the Debtors' assertion that they have certain medical conditions which are chronic and of sufficient severity so as to make it unlikely that they will return to gainful employment. Moreover, given their medical conditions, the Court accepts that certain expenses claimed by the Debtors, although higher than what would otherwise be allowed, are absolutely necessary for the maintenance of the Debtors' health and well-being. For example, there is no question that the Debtors' allocation of $538.33 per month for medical expenses is a necessity. The Debtors were also able to make a sufficient correlation between their monthly expenditures of $500.00 for transportation and $150.00 for charity as expenses necessary for the maintenance of their health.[4]

Notwithstanding, this Court has recognized that the mere existence of a medical condition, no matter the severity, is insufficient to form the basis of "undue hardship" discharge. Instead, as it applies to the second prong of the Brunner test, this Court has set forth that a strong nexus must exist between a debtor's medical condition and their inability to repay the student-loan debt. *Swinney v. Academic Financial Servs. (In re Swinney)*, 266 B.R. 800, 805 (Bankr. N.D.Ohio 2001). Typically, this is accomplished by showing that the medical condition(s) will have a negative, long-term effect on the debtor's income. *Id.*

---

[4] For the sake of privacy, the exact nature of the Debtors' medical conditions are not stated in this Decision.

Page 11

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

In this matter, however, there is lacking a strong correlation between the Debtors' medical conditions and their inability to repay the student-loan debts of Mrs. Pietras. Of import, the Debtors, despite their inability to work, enjoy an appreciable level of income. In this respect, the Debtors' monthly income of $4,841.00, amounting to $58,092.00 annually, is noticeably in excess of $51,319.00 per year, this latter figure being the median level of income for a like size household in the Debtors' geographic area,[5] Moreover, as their income is derived solely from government benefits, the Debtors' income is likely to be steady, a point which the Debtors did not seek to contradict.

Also working against the Debtors as it applies to this Court's assessment under the second prong of the Brunner test, a significant monthly expense put forth by the Debtors cannot be allowed. In their monthly budget, the Debtors submitted that they expend the sum of $600.00 for home maintenance. This expense represents the funds necessary to repay a loan recently incurred by the Debtors to finance home improvement projects, the most prominent of these projects being the installation of new flooring and carpeting. However, even assuming that such improvements were necessary to maintain a minimal standard of living, the Debtors readily acknowledge that the terms of the loan will soon be completed, thereby affording the Debtors the ability in the not too distant future to reallocate at least some of their financial resources toward the repayment of Mrs. Pietras' student-loan obligations.[6]

---

[5] This is the median income for a family of two in Ohio, the state of the Debtors' residence. http://www.justice.gov/ust/eo/bapcpa/20110315/bci_data/median_income_table.htm

[6] The Debtors also reported that recently the income of Mrs. Pietras has been slightly lower than her reported monthly income. According to the Debtors, this is because Mrs. Pietras is currently having extra funds withheld from her monthly government benefits to pay a tax arrears. However, as with the Debtors' $600.00 per month home maintenance expense, the Debtors acknowledged that this additional withholding will soon end, thus rendering it an nullity as it concerns the second prong of the Brunner test.

Page 12

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

Therefore, when set within the above context, it is readily apparent to the Court that, as it concerns the first and second prongs of the Brunner test, the Debtors have and will continue to have the ability to make meaningful payments toward Mrs. Pietras' student-loan obligations, while at the same maintaining for themselves a minimal standard of living. To some degree, moreover, the Debtors did not dispute this conclusion, having acknowledged at the conclusion of the Trial held in this matter that they could pay something toward Mrs. Pietras' student-loan obligations. All the same, the Debtors maintain that, while they do have some resources available to repay Mrs. Pietras' student-loan debts, they simply do not have sufficient financial resources available to fully service the obligations.

The Debtors' position, concerning their inability to fully service Mrs. Pietras' student-loan obligations, has some degree of merit. At the present time, Mrs. Pietras owes just over $120,000.00 to the Defendant. As a result, to repay just the principal on this loan, the Debtors would, over a ten-year period, have to devote $1,000.00 per month to repay Mrs. Pietras' obligations to the Defendant. Once more, even if the repayment period were extended beyond ten years, the Debtors' budget would still be stressed given the likely compounding and capitalization of accruing interest on the student loans.

In the end, however, whether the Debtors' budget has sufficient room to fully repay Mrs. Pietras' student-loan obligations is an academic point. In order to receive a discharge of a student-loan obligation, a debtor must establish the existence of all three prongs of the Brunner test. And in this case, there is simply no way to conclude that the Debtors have sustained their evidentiary burden under the third prong of the Brunner test.

Under the third prong of the Brunner test, a debtor may only receive an "undue hardship" discharge of their student loan if they can show that they have made a good faith effort to repay the obligation. This requirement serves the goal of helping to ensure that a debtor acts responsibly toward their student-loan creditor given that educational loans are, in most instances, extended without regards

to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003).

In this case, the Debtors, and apparently the Debtors' daughter, have never made an attempt to repay Mrs. Pietras' student loans. The Court finds this omission to be fatal to the Debtors' case. Based on its focus on a debtor's efforts at repayment, inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr. N.D.Ohio 2007). While the lack of any meaningful attempt by a debtor to repay a student-loan obligation does not necessarily operate as an absolute bar to a finding of good faith under the third prong of the Brunner test, a viable reason needs to be established for the lack of any meaningful repayment. *In re: Cekic–Torres*, 431 B.R. 785 (Bankr.N.D.Ohio 2010).

In this matter, however, no viable reason was offered justifying the lack of any meaningful payments toward Mrs. Pietras' student loans, with the evidence, instead, showing that the Debtors were fully capable of putting forth an effort to repay the loan obligations. This conclusion is derived from the fact that, as discussed earlier, the Debtors, despite having the financial ability to make at least partial payments on Mrs. Pietras' student-loan obligations, directed their financial resources to nonessential expenditures. In this regard, two expenditures particularly stand out.

First, prior to seeking bankruptcy relief, the Debtors, rather than attempting to repay any of Mrs. Pietras' student loans, continued to make payments on two timeshares. Moreover, as discussed, the Debtors did not completely abandon this practice even after seeking bankruptcy relief, with the Debtors continuing to make payments on one of their timeshares.

Michael/Laura Pietras v. U.S. Dept. of Education, et al
Case No. 10-3169

Secondly, the Debtors, although declining to make any payments on the student-loan obligations incurred for their daughter's benefit, nevertheless determined that they still had within their means the ability to pay for their daughter's cell phone service at approximately $70.00 per month. The Court is, thus, confronted with this dichotomy: The Debtors, when occurring obligations on behalf of their daughter, find the means to pay for one obligation, but not the other. The Court simply cannot reconcile this disparate treatment with the notion of good faith. A couple of additional matters also reinforce the conclusion that the Debtors lacked good faith toward the Defendant.

One, the Debtors never sought to obtain any sort of deferment on Mrs. Pietras' loan obligations to the Defendant. For this purpose, it was observed in the decision of *Williams v. EFG Tech/Rutgers (In re Williams)*, that in order to satisfy the good faith requirement of the Brunner test, "the debtor must not have ignored her obligations and must have dealt with her student loans through repayment, deferral or restructuring." 296 B.R. 128, 135 (Bankr. D.N.J. 2003). Second, the Debtors' decision to use the bankruptcy process to address Mrs. Pietras' student-loan obligations seems to have been more of a first option, rather than a last option, with not even four years elapsing between the time Mrs. Pietras incurred the last of her student-loan obligations and the time the Debtors sought bankruptcy relief. *See Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 308 B.R. 495, 505 (10th Cir. B.A.P. 2004) ("a good faith analysis should take into account the amount of time that has lapsed between the debtor obtaining his or her degree and the bankruptcy filing."); *Lewis v. Ill. Student Assistance Comm'n (In re Lewis)*, 276 B.R. 912, 919 (Bankr.C.D.Ill.2002) ("all else being equal, the older the loans are, the more readily they will be discharged.").

In summation, the Debtors, for the reason stated herein, have failed to sustain their evidentiary burden of showing that repaying Mrs. Pietras' student-loan obligations would impose upon the Debtors an "undue hardship" for purposes of § 523(a)(8). At the forefront of this conclusion is the Debtors' failure to sustain their burden under the third prong of the Brunner test which, as a prerequisite to a finding of "undue hardship," requires that a debtor show that he or she made a good faith effort to

Page 15

repay their student-loan obligations. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(8), the educational obligations incurred by the Debtor, Laura Pietras, to the Defendant, National Collegiate Trust, are not subject to the discharge injunction of 11 U.S.C. § 524.

***IT IS FURTHER ORDERED*** that the Plaintiffs/Debtors' Complaint be, and is hereby, DISMISSED.

Dated: September 16, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 16th day of September 2011 to:

American Education Services
PO Box 2461
Harrisburg, PA 17105-2461

National Collegiate Trust
One Cabot Road
Medford, MA 02155

Laura Pietras
618 Caswell Ave.
Toledo, OH 43609

Michael Pietras
618 Caswell Ave.
Toledo, OH 43609

John L Day
525 Vine Street, #800
Cincinnati, OH 45202

Joseph M. McCandlish
jmccandlish@weltman.com

Beth Ann Schenz
The Huntington National Bank
6101 West 130th Street, NE01
Parma, OH 44130

Joanna E. Baron
1900 Monroe St, #113
Toledo, OH 43604

TERI (The Education Resources Institute)
330 Stuart Street, Suite 500
P.O. Box 9123
Boston, MA 02117-9123

US Department of Education
Office of General Counsel
400 Maryland Avenue, SW
Room 6E353
Washington, DC 20202

Steven M. Dettelbach eswee06
United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624

/s/Laura Doerfler
Deputy Clerk, U.S. Bankruptcy Court